United States Court of Appeals,

Eleventh Circuit.

No. 96-2417.

UNITED STATES of America, Plaintiff-Appellee,

v.

John CHRISTO, III, James W. Maulden, Defendants-Appellants.

Dec. 1, 1997.

Appeal from the United States District Court for the Northern District of Florida. (No. 95-05012-2-CR-LAC), Lacey A. Collier, Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and LIMBAUGH[*], Senior District Judge.

PER CURIAM:

Defendant-Appellants John Christo III ("Christo") and James W. Maulden ("Maulden") appeal from jury convictions. Defendant Christo appeals his sentence for conspiracy, misapplication of bank funds, and bank fraud. Defendant Maulden appeals his sentence for conspiracy, misapplication of bank funds, bank fraud, and money laundering. We affirm in part, reverse in part, and vacate and remand in part.

*Background*

Christo was the president of Bay Bank, and a member of its board of directors. Codefendant Maulden was also a member of the board of directors of Bay Bank until 1989. Between 1986 and 1988, Maulden would occasionally write checks for which he had insufficient funds in his account (collectively "NSF check(s)"). In accordance with bank policy, the NSF checks were recorded as overdrafts; and Maulden paid interest on the amount of the check.

---

[*]Honorable Stephen N. Limbaugh, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

In 1988, Maulden entered into a scheme with Christo and Christo's father[1] so that when he submitted an NSF check, the bank would call his accountants, who then would write checks on Maulden's other accounts to cover the NSF check. Christo would personally intercede on a daily basis to ensure the procedure was followed. Many of the checks written to cover the NSF checks were drawn on accounts which also had insufficient funds. Because Maulden was not charged interest on these NSF checks, he received interest-free, unrecorded loans, without the prior approval of the board of directors.

*Discussion*[2]

I. Defendant Maulden

Maulden claims insufficient evidence supported his conviction for money laundering under 18 U.S.C. § 1957[3] because no proof was presented of an independent criminal transaction separate from the underlying offenses.[4] He claims that, for a conviction to be sustained, the government must show that a defendant took the added step of engaging in a prohibited monetary transaction with proceeds that were "obtained" from a specific unlawful activity. The government basically contends that every check kiting scheme involves conduct that is punishable under the money laundering statutes.

---

[1]The other codefendant was John Christo, Jr., the main owner of the bank and chairman of its board of directors. John Christo III, codefendant in this case, was chiefly involved in the scheme; and all references to "Christo" in this opinion refer to him.

[2]Other issues raised on appeal by Defendants Christo and Maulden are without merit. These issues include: jury instructions, failure to charge jury, sentence enhancement for abuse of trust, sentence enhancement for false testimony, and numerous evidentiary issues.

[3]Money laundering occurs under section 1957 when one "knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity...." 18 U.S.C. § 1957(a).

[4]The underlying offenses were bank fraud and misapplication of funds.

A claim of insufficient evidence to sustain a conviction is reviewed *de novo*. *United States v. Kramer,* 73 F.3d 1067, 1070 (11th Cir.1996). "We, however, view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Martinez,* 83 F.3d 371, 374 (11th Cir.1996). We are required to affirm a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Money laundering is an offense to be punished separately from an underlying criminal offense. *United States v. Edgmon,* 952 F.2d 1206, 1213 (10th Cir.1991) (finding that Congress intended money laundering and other specified unlawful activity to be distinct offenses punished separately). The main issue in a money laundering charge, therefore, is determining when the predicate crime becomes a "completed offense" after which money laundering can occur. *United States v. Kennedy,* 64 F.3d 1465, 1477-78 (10th Cir.1995).

Counts V, VI, and VII of the indictment charged Maulden with violations of 18 U.S.C. §§ 1957 and 2. Each count involved a separate withdrawal of funds to pay a check written to SouthTrust Bank from one of Maulden's business accounts at Bay Bank. Each check was a $25,000 monthly payment on Maulden's outstanding loan at SouthTrust. The indictment alleged that each withdrawal involved funds derived from misapplication of bank funds and bank fraud.

A bank fraud offense is not complete until there is an "execution" of the scheme to defraud. *United States v. Lemons,* 941 F.2d 309, 318 (5th Cir.1991); *see also United States v. Sirang,* 70 F.3d 588, 595-96 (11th Cir.1995). The execution is completed by the movement of money, funds, or other assets from the financial institution. *United States v. Mancuso,* 42 F.3d 836, 847 (4th Cir.1994); *see also United States v. Lilly,* 983 F.2d 300, 304-05 (1st Cir.1992). Likewise,

misapplication of funds occurs when the defendant deprives the bank of its right to have custody of its funds. *See United States v. Cauble,* 706 F.2d 1322, 1354 (5th Cir.1983); *see also United States v. Morales,* 978 F.2d 650, 655 (11th Cir.1992) ("[M]isapplication of bank funds was complete when the checks were cashed.").

The government's proof of each count involved a similar series of transactions: (1) proof of withdrawal of $25,000 from Bay Bank for Maulden's monthly note payment to SouthTrust Bank; and (2) proof that each check was paid by Bay Bank on the basis of credit extended on uncollected funds through several of Maulden's Bay Bank accounts for a period of one to three days until good funds arrived from Maulden's main operating account in Mississippi.

Viewing the evidence in the light most favorable to the government, we conclude that these facts are insufficient to establish that Maulden engaged in a monetary transaction that was separate from and in addition to the underlying criminal activity. The check kite did not deprive the bank of anything, nor did Maulden unlawfully obtain something from the bank, until Bay Bank disgorged its funds by the payment of the check to SouthTrust Bank. Thus, the withdrawal of funds charged as money laundering was one and the same as the underlying criminal activity of bank fraud and misapplication of bank funds. We do not accept that money laundering is inherent in bank fraud or misapplication of funds. We do not understand Congress to have been so subtle when it enacted the money laundering statute.

The government relies on three cases: *United States v. Savage,* 67 F.3d 1435 (9th Cir.1995); *United States v. Estacio,* 64 F.3d 477 (9th Cir.1995); and *United States v. Johnson,* 971 F.2d 562 (10th Cir.1992). Each case supports our decision that the underlying criminal activity must be *complete* before money laundering can occur. In *Savage,* the defendant wired money (proceeds of wire and mail fraud—prior and separate criminal activities) from one bank account to another. 67

F.3d at 1441-42. The *Johnson* court held that a transfer of funds from investors to the defendant's account did not violate money laundering statutes because there was no separate transaction involving "criminally derived property" until the defendant had possession of the funds. 971 F.2d at 569-70.

*Estacio* is about an elaborate check kiting scheme involving two unwitting banks. And it is, therefore, materially different from the case before us. When a check was written on insufficient funds in bank X and then deposited in bank Y creating a transfer of funds or credits into bank Y on which Estacio could then write checks, Estacio could be said to have obtained something of value by fraud from bank X. And when he, then, drew upon the credit in bank Y, we suppose he could have been guilty of money laundering.

In our case, the victim bank, that is, Bay Bank, lost nothing through fraud until it paid the check written on its account to SouthTrust. And the funds paid by Bay Bank to SouthTrust were not used again by Defendants (which would be the step necessary to constitute money laundering). Furthermore, this loss of funds by payment to SouthTrust was a necessary element to complete the bank fraud and misapplication of bank funds crimes. More specifically, the crimes of bank fraud and misapplication of bank funds were, until then, incomplete and had generated no proceeds[5] to be laundered.

For these reasons we reverse Maulden's conviction for money laundering (Counts V, VI, and VII) and remand for resentencing.

II. Defendant Christo

---

[5]Because Maulden made each of the three pertinent checks good by depositing additional funds with Bay Bank, the real proceeds to Maulden in these three instances probably were the savings of not paying interest on loans for the two or three days when there was a float because of the checks. The government, however, did not undertake to show what this savings in interest was or if and how it was used by Maulden.

Christo argues that resentencing is required because the lower court erred in sentencing him under the money laundering guideline. For the reasons already discussed, we conclude that insufficient evidence exists to support a finding that money laundering was the object of the conspiracy. Resentencing of Christo is required.

Except as discussed above, we affirm the convictions of Christo and Maulden.

AFFIRMED in part, REVERSED as to Counts I, V, VI, and VII, VACATED and REMANDED for resentencing consistent with this opinion.